[S. F. No. 5482.  In Bank.—May 24, 1910.]

## J. R. WILLIAMS, Petitioner, v. BOARD OF TRUSTEES OF THE CITY OF BAKERSFIELD, and F. G. MUNZER, et al., Trustees, Respondents.

MUNICIPAL CORPORATIONS—CONSOLIDATION—GOVERNMENT—POPULATION —ELECTION OF OFFICERS TO COMPLETE CONSOLIDATION—AGGREGATE INCREASE—MANDAMUS.—Where contiguous municipalities of the sixth and fifth classes have voted to consolidate under the terms of the act of March 11, 1909, which requires the consolidated municipality to be governed solely by the charter and ordinances of the one having the greater population, the election of officers required to complete the consolidation must be of the officers of the municipality of the fifth class, and the mere fact that the aggregate population is sufficient to justify a future organization of a city of the fourth class is immaterial, and a taxpayer of the municipality of the sixth class is not entitled to a writ of mandate to compel the immediate election of officers of the fourth class to complete the consolidation.

ID.—INTENT OF CONSOLIDATION ACT.—The clear intent of the Consolidation Act is that the identity of the municipality having the least population shall cease when the consolidation is complete; that all of its ordinances shall be deemed repealed, and that the consolidated corporation shall exist and be governed in accord with the law in force in the municipality having the greater population ascertained in the manner prescribed by law, at the time when the petition for the submission of the question of consolidation was presented to its legislative body.

ID.—DETERMINING CLASS OF LARGER MUNICIPALITY—IMMATERIALITY OF ENUMERATIONS.—In determining the class to which the municipality having the larger population belongs, it is immaterial whether the last federal census is to control as stated in section 2 of the Consolidation Act, or whether the special enumeration taken by the respective cities shall control the federal census, since it appears that, by either method of enumeration, the municipality having the larger population would become a municipal corporation of the fifth class, if it were then incorporated for the first time.

ID.—POPULATION OF AGGREGATE BODY—SPECIAL ENUMERATION.—Assuming, without deciding, that in determining the aggregate population of the consolidated municipality, the special enumerations may be used under the Consolidation Act, it is immaterial whether or not such special enumeration made by the trustees of the consolidating municipalities under the act of March 2, 1883, prevail over the federal census, and show the possibility of an incorporation of an aggregate body of the fourth class.

ID.—CONSTITUTIONALITY OF CONSOLIDATION ACT.—The extent of the aggregate population of the consolidating bodies cannot affect the constitutionality of the Consolidation Act, which determines that the consolidated municipality shall be governed by the class of the larger in population. In the absence of a prohibition in the constitution, the power of the legislature is absolute in this regard.

ID.—GENERAL CONSOLIDATION ACT NOT IN CONFLICT WITH CONSTITUTION.—The general Consolidation Act is not in conflict with section 6 of article XII of the constitution providing that "corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population, of cities and towns."

ID.—CONSOLIDATION ACT NOT "SPECIAL"—UNIFORM OPERATION.—The Consolidation Act of March 11, 1909, is in no sense a "special" law, within the meaning of the constitution. Its provisions are applicable in every case of contiguous municipalities desiring to consolidate into one municipality, and have a uniform operation in all cases.

ID.—APPROPRIATENESS OF PROVISIONS—GOVERNMENT OF CONSOLIDATED MUNICIPALITIES.—It is appropriate and necessary that such an act shall contain provisions as to the government of the consolidated municipality made up of two or more municipalities having different organic acts until such time as the electors may, if entitled by reason of their population to do so, reorganize under other laws. It is natural and reasonable to provide that the consolidated municipality shall have the name, ordinances, and organic act of the municipality greatest in population.

ID.—PRACTICAL "ANNEXATION."—The method adopted for the so-called "consolidation" is practically and substantially an annexation of the municipality or municipalities having the lesser populations to the municipality greatest in population, just as much as an annexation of unincorporated territory is an annexation to an existing municipality. The name, laws, and organic act of the greatest in population continue in force and by reason of the proceedings taken become effectual throughout the new territory.

ID.—POWER OF LEGISLATURE—GENERAL SCHEME OF CONSOLIDATION.—The legislature has power to provide a general scheme of consolidation for municipalities desiring to consolidate, involving the practical disincorporation of the smaller in population of the municipalities to be consolidated, and the annexation of the territory included therein to the municipality greatest in population.

ID.—ATTAINMENT OF INCREASED POPULATION—HIGHEST CLASS NOT MADE IPSO FACTO—VOTE ESSENTIAL.—Where the consolidation results in an increased population entitling the city of the higher class to become still higher in classification, it does not and cannot have that result *ipso facto*. A vote upon petition of the requisite number of qualified electors in pursuance of the Classification Act is essential to produce that result. Until that result is accomplished, the

consolidated municipalities must retain the organization and laws. of the existing municipality having the higher classification at the time of the consolidation.

ID.—PRESUMPTION IN FAVOR OF CONSTITUTIONALITY OF ACT.—An act of' the legislature will not be declared by the courts to be opposed to the state constitution unless its violation of some provision thereof is clearly made to appear.

ID.—TIME FOR ELECTION OF OFFICERS—DIRECTORY PROVISION.—The provision of the Consolidation Act as to the time for holding the election of officers to complete the consolidation, is directory, and though such time has elapsed, without a proper election being held, the election may still be held upon proper notice thereof.

APPLICATION for Writ of Mandate to Trustees of Bakersfield.

The facts are stated in the opinion of the court.

E. L. Foster, and E. G. Knapp, for Petitioner.

Matthew S. Platz, City Attorney of Bakersfield, for Respondents.

ANGELLOTTI, J.—This is an original proceeding in mandate, instituted by a resident, elector, and taxpayer of the town of Kern in Kern County, to obtain a writ requiring the defendants to set off the combined territory of the town of Kern and the city of Bakersfield in said county into six wards, and to call an election therein for the election of officers of cities of the fourth class.

The city of Bakersfield and the town of Kern are contiguous municipalities. On October 18, 1909, proceedings were commenced for their consolidation under the provisions of the act entitled "An act to provide for the consolidation of municipal corporations," approved March 11, 1909 (Stats. 1909, p. 282), providing for the consolidation of two or more contiguous municipal corporations into one, "to be thereafter governed in the name and under the General Municipal Incorporation Law, or freeholders' charter, as the case may be, under which the greater or greatest in population of such municipal corporations, as shown by the last federal census, may be governed." (Sec. 1.) The town of Kern was at such date a city of the sixth class, organized and existing under the

provisions of the General Municipal Corporation Act. (Stats. 1883, p. 93, and amendments.) According to the last federal census it had a population of 1,291. In 1907 an enumeration of the inhabitants had been made by the trustees under the provisions of section 3 of the act to provide for the classification of municipal corporations, approved March 2, 1883, (Stats. 1883, p. 24), which showed 3,242 inhabitants. The city of Bakersfield was a city of the fifth class, organized and existing under the same act, with a population, according to the last federal census, of 4,836, and with a population according to an enumeration made by the trustees thereof in 1907, of 7,338. The Classification Act, as amended, provided that cities having a population of more than ten thousand and not exceeding fifteen thousand shall constitute the fourth class, that cities having a population of more than three thousand and not exceeding ten thousand shall constitute the fifth class, and that those having a population of not exceeding three thousand shall constitute the sixth class. (Sec. 1.) Under both the federal census and the special enumeration Bakersfield was thus a city of the fifth class, and Kern had taken no proceedings under its special enumeration to reorganize as a city of the fifth class (sec. 3), and was confessedly a city of the sixth class. The result of the special election held in these municipalities in accord with the law upon the question of consolidation was in favor of the proposition, and an order was regularly made declaring the result, and the proper abstract was filed in the office of the secretary of state. It is not questioned that all of the proceedings up to this point were in strict accord with the provisions of the Consolidation Act.

Under the provisions of this act, where the municipality having the greater or greatest population, "ascertained as hereinbefore provided," is not operating under a freeholders' charter, the consolidation is not complete until a special election shall have been held in the combined territory "for the election of the officers required by law to be elected in corporations of the class to which the consolidated municipal corporation shall belong when such consolidation is completed," the returns thereof canvassed, and the result declared and entered. (Sec. 2.) In accord with the requirements of the statute in that regard, the trustees of the city of Bakersfield

regularly ordered such an election, to elect officers as designated for cities of the fifth class, the theory being that the consolidated municipal corporations will be a city of the fifth class. The claim of plaintiff is that, by reason of the fact that according to the special enumeration of 1907 the combined territory has a population of over ten thousand, viz., 10,580, the consolidated municipality will be a city of the fourth class, and will operate under the charter provided by the legislature for cities of that class, and that the election should be for officers of a city of that class, instead of a city of the fifth class, the elective officers of the two classes differing in many respects. A division into wards is also essential in cities operating under charters provided for cities of the fourth class. Accordingly, plaintiff seeks the writ of mandate hereinbefore described.

The facts stated appear in plaintiff's petition. The matter has been submitted for decision upon a demurrer thereto.

It is apparent that plaintiff is entitled to no relief if the consolidated municipal corporation is to be governed by the provisions of the charter provided by the legislature for cities of the fifth class.

If the plain language of the Consolidation Act is to control in this matter, it appears clear to us that such corporation will be governed by such charter. As we have seen, the sole provision for a consolidation is for a consolidation "into one municipal corporation, to be thereafter governed in the name and under the General Municipal Incorporation Law, or freeholders' charter, . . . under which the greater or greatest in population of such municipal corporations, as shown by the last federal census, may be governed." (Sec. 1.) By the express terms of section 2, the question submitted to the qualified electors of each of the municipalities is "whether such municipal corporations shall become consolidated into one municipal corporation, to be governed in the name, and under the freeholders' charter, *or as a city of the class under the General Municipal Incorporation Law,* as the case may be, *under which the greater or greatest in population of such municipal corporations,* ascertained as hereinbefore provided, *may be governed at the time such petition is so received."* Section 3 provides that when the consolidation is complete, the property of the former corporations shall *ipso facto* be

vested in the new corporation, "or any officer or board thereof which has the power to hold or control such property under the freeholders' charter, *or other law under which the greater or greatest in population of the municipal corporations so consolidated was theretofore governed."* The same section provides that upon such consolidation being effected, all ordinances of the municipalities except those of the one having the greater or greatest population shall be deemed repealed, and that the ordinances of the municipality having the greater or greatest population shall *ipso facto* operate throughout the combined territory, and also that all cases then pending in any justices' court, police court, recorder's court, etc., of any of the other municipalities shall be deemed *ipso facto* to be transferred to the appropriate court of the municipality of the greater or greatest population. There is absolutely nothing in the act that detracts from the effect of these provisions, and the act clearly shows the intent that the consolidated municipal corporation shall exist and be governed in accord with the law in force in the municipality having the greater or greatest population, ascertained in the manner prescribed by law, at the time the petition for the submission of the question of consolidation was presented to its legislative body. Under the provisions of the act it is immaterial whether or not the special enumerations by the trustees of the respective cities in 1907 control the federal census of 1900, but we do not desire to be understood as intimating that such special enumerations may be looked to at all in proceedings under this act. Both under the federal census and the special enumerations, Bakersfield was, at the time of the filing of such petition, the greater city in population, had a population of not less than three thousand nor more than ten thousand, and was in fact governed as a city of the fifth class under the General Municipal Incorporation Law, the class to which it would belong by reason of its population if it was being incorporated for the first time under the provisions of such law. If the language of the Consolidation Act is to govern, the consolidated municipal corporation will therefore operate under the charter provided by the legislature for cities of the fifth class.

It is claimed by counsel for plaintiff that if the Consolidation Act be construed in this manner, it is in violation of section 6 of article XI of our constitution, in so far as it provides

that, regardless of the aggregate population of the consolidated cities, the consolidated municipality shall be of the class to which the municipality greater or greatest in population belonged at the time of the filing of the petition and be governed by the legislative charter provided for cities of that class. This amounts to a claim, as well put by counsel for defendant, that in view of section 6 of article XI of the constitution, the legislature has no power, by general law, to give "to electors of two or more municipal corporations, the right to decide, by their votes, whether or not those two or more municipal corporations shall be consolidated, to be thereafter governed," until they see fit to change their government in a legal manner, by a law which, in effect, constitutes the charter of the city greater or greatest in population at the time of the initiation of the consolidation proceedings. In the absence of constitutional inhibition, there can, of course, be no question as to the absolute power of the legislature in this regard. We shall assume, purely for the purposes of argument, that the special enumerations prevail over the federal census, and that the aggregate population of the two cities at the time of the initiation of these proceedings had been officially ascertained to be 10,580.

The constitutional provision, so far as material, is as follows: "Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization, and classification in proportion to population, of cities and towns, which laws may be altered, amended or repealed."

We do not think that this provision inhibits such legislation as is here involved. It is clear, of course, that the Consolidation Act of March 11, 1909, is in no sense of the word as used in our constitution, a "special" law. Its provisions are applicable in every case of contiguous municipalities desiring to consolidate into one municipality, and have a uniform operation in all such cases. It is appropriate, and, in fact, necessary that such an act shall contain provisions as to the government of the consolidated municipality, made up of two or more municipalities having different organic acts, until such time as the electors thereof may, if entitled by reason of their population to do so, reorganize under other laws. A very natural and reasonable provision for such cases would appear to be

the one made by the legislature in this act, viz.: that the consolidated municipality shall have the name, ordinances, and organic act of the municipality greater or greatest in population, whether the organic act of that municipality be a freeholders' charter, or one of the charters created by the General Municipal Corporation Act. Under the method here adopted while the proceeding is styled a "consolidation" of two or more municipalities into one it is practically and substantially an annexation of the municipality or municipalities having the lesser populations to the municipality greatest in population, just as much an annexation as we have where unincorporated territory is annexed to an existing municipality. The name, laws, and organic act of the greatest in population continue in force and, by reason of the proceedings taken, become effectual throughout the new territory. We do not think that it can be disputed that the legislature may provide a general scheme of consolidation for municipalities desiring to consolidate, involving the practical disincorporation of the smaller in population of the municipalities to be consolidated and the annexation of the territory included therein to the municipality greatest in population. This is what, in our judgment, they have done by the act under consideration. If there is in the proceeding provided by this act any creation, incorporation, or organization of a new corporation, it is so only in a most limited sense, and not at all in the sense that requires such corporation to adopt the organic act of the class of municipal corporations to which, by reason of its population, it may be entitled. So far as practical effects are concerned, the result of the proceeding given by the act is the same as it would have been had there first been a disincorporation of the smaller municipality, and a subsequent annexation of the territory incorporated therein to the municipality greater in population. We do not understand that it is claimed that where a municipality existing under the General Municipal Corporation Act attains a population entitling it to reorganize as a city of the higher class, whether by reason of the annexation of additional territory or any other cause, it *ipso facto* becomes subject to the organic act of cities of such higher class. The Classification Act itself expressly provides that this result can be accomplished, where the increase is shown only by a special enumeration and not by a federal census, only by

a vote of the electors of the municipality on the question of reorganization at a general or special election, after a petition for the submission of that question, signed by not less than one fifth of the qualified electors (Classification Act, sec. 3), and that such a vote is necessary in all cases to effect such a change of organic act is fully recognized by all the opinions in the case of *Ex parte Fedderwitz,* (Cal.) 62 Pac. 935, a case very much relied on by counsel for plaintiff. Even in the opinion of the chief justice therein, specially relied on by plaintiff, it is said: "A city of the fourth class, organized under the charter of that class, retains its charter notwithstanding an increase of population which put it in the third class." While, therefore, it may be conceded that in the case of an original incorporation under the General Municipal Corporation Act, the municipality must necessarily take the organic act of the class to which it belongs by reason of its population, under the views expressed in the case last cited, it retains that organic act regardless of changes in population, until its electors decide upon reorganization under another act, and there is nothing in section 6 of article XI of the constitution requiring otherwise. In the concurring opinion of Justice Henshaw, in *Ex parte Mitchell,* 120 Cal. 390, 392, [52 Pac. 799], cited in *Ex parte Fedderwitz,* (Cal.) 62 Pac. 935, it is declared that the class originally fixed for a municipality continues, notwithstanding future fluctuations and changes in population, until further legislative action changing the class has been adopted, and that such a condition of the statute is in accord with the sense and meaning of the constitutional injunction requiring a classification of cities by population. If there is nothing in the constitutional provision inhibiting laws warranting such conditions, in view of what we have already said, we are unable to see therein any inhibition of such provisions of the Consolidation Act as those under discussion. As we have said, for all practical purposes the conditions are the same. It is a rule emphatically declared by this court on very many occasions that an act of the legislative department of the state will not be declared by the courts to be opposed to the state constitution unless its violation of some provision thereof is clearly made to appear. We are satisfied that no such condition confronts us in the case at bar.

There are other points made by defendants against plaintiff's claim for a writ of mandate, but, in view of our conclusion on the matter already discussed, it will be unnecessary to notice them here. It should perhaps be further said, in view of what is said in the briefs as to the necessity of holding the election for officers within a designated time, that we regard such provision as directory only, so that, although such time may now have passed without a proper election being held, the election may still be held on proper notice thereof. (See *Wheeler* v. *Herbert,* 152 Cal. 224, 241, [92 Pac. 353].)

The application for a peremptory writ of mandate is denied and the alternative writ heretofore issued is discharged.

Shaw, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.